Good morning. May it please the Court, my name is David Porter and I represent the appellant Linda Ann Chaney. I'd like to step back and take a larger look at the broader context of this case. I think it might be helpful. In other districts, not the Eastern District of California, defense counsel and a prosecutor will agree, have an agreed upon sentence when there's a cooperation agreement based on their own evaluation of the case and the defendants' cooperation. That's not how we do it in the Eastern District of California. For better or for worse, and it's usually for worse for defendants, criminal defendants, we start with the guidelines. And it's very, very clear that in the record of this case that we start with the guidelines in all cases, because on page 2 of the 5K letter that we filed under seal, the government states the policy of the United States Attorney's Office provides for a departure of between 10 and 30 percent for defendants who provide information and 20 to 40 percent for defendants who provide historical information. That is a percentage off of the guidelines. So the guidelines are the starting point, and as the Supreme Court has instructed in Gall, the guidelines are the starting point and the initial benchmark for all sentencing decisions. That's what we do here in the Eastern District of California. Now, it might have made sense for the district court to do what it did in this case if it was one of the earlier, the other districts that I'm talking about. It doesn't make sense here. What happened is the only relevant thing that happened since Ms. Cheney's sentencing is that the law has gotten better for her. The Sentencing Commission took a baby step and reduced by two levels the punishment for crack cocaine cases. It ameliorated somewhat the 1 to 100 disparity. And you're arguing guidelines. What's the guideline range if she didn't have a deal? If she did not have a deal, 235 to 293 months. And the government, because of her cooperation, agreed to argue for 108? Yes, it did. And the judge gave her 103. That's correct. And after stating that he almost never goes below 50 percent. That is correct. And this is Judge Carrollton? Yes, it is. Who's played hard hammer Harry? I agree with that characterization. But I also note that the judge himself had many, many misgivings. If you read the sentencing, the transcript of the 3582 proceeding, he had many misgivings about doing what he did in this case. But he did it. But he did it. And this was after your client signed a plea agreement, really kind of a remarkable document that, among other things, says that if she ever moves to reduce her sentence, they're free to charge the other counts. Yes. The dismissed counts. That's correct. But the point I'm trying to make here is that the starting point was the guidelines. That's what the prosecutor's policy is. We're going to start with a percentage reduction off of the guidelines. And what are those guidelines based on? We have the Sentencing Commission of the United States saying that those were extremely harsh. They were trying to get Congress to reduce them for years and years. They finally did what they could in making a small mitigating step to bring them closer together. They haven't brought them. They haven't equalized them, which is what the current administration is now recommending. They're between 1 in 20 and 1 to 80. But the only thing that happened was that the law got better for Ms. Cheney. But Ms. Cheney really got a deal to begin with. She did. But remember what the deal was based on. The deal was based on her cooperation. Now, the government, in the 3582 hearing, you know, kind of poo-pooed the quality of that cooperation and said... Does that make any difference here? Does it make a difference here? Yes. Because that is... The government held its end of the deal. It did. Including not squawking about the five months. That's correct. But what everyone was starting with was this extraordinarily harsh guideline, and the cooperation stands alone. Isn't that the case every time a defendant cooperates? They're trying to avoid harsher penalties? No. And that's why I started out my arguments the way I did, was because in other districts, they don't start out with the guidelines. They said, hey, you know, this is what this case is worth. This case, this is a 108-month sentence case. Based on the cooperation, based on what we've seen here, that's what it's worth. And they come up with that figure from their own experience. Perhaps they've been long-time state prosecutors or federal prosecutors. They come to that decision based on their own experience. Here, they start out with this draconian sentencing guideline that the sentencing commission says doesn't make sense. Now, it's so rare that the commission lowers guidelines. It's even... Well, they're not being draconian, but they were perfectly legal. They were perfectly legal. I agree with that. But they lower them. Not only is it so rare or is it very rare that the sentencing commission lowers them, but it takes the additional step of lowering them retroactively and saying twenty-fifth... I've had argument and pressure about lowering these guidelines virtually as long as I've been a Federal judge, certainly for the last 6, 18 years. And I would have to believe at the time this plea was done, it was not beyond the realm of possibility that these guidelines would be changed. There was terrific pressure from some members of Congress to do this. Letters from judges, including me, to suggesting that these guidelines be lowered. And it seems to me that was taken into consideration in the plea agreement. Oh, absolutely not. There is no evidence whatsoever that the lowering of the guidelines because of the disparity of crack to powder was taken into consideration in this case. This was 2006. I have to assume that the clause in the plea agreement about being able to charge the dismissed counts if she ever moved to reduce sentence was at the insistence of the government. You didn't suggest that, did you? No. It was the government that wanted that. But that hadn't... Why didn't they want it? The government includes many provisions, as many as it can, to protect its agreement. When Bailey came down, a lot of people got their 924C convictions vacated. But then they got the two-level gun bump. So the government tries to anticipate whatever it can and to make the plea agreement as strong as they can. Didn't Judge Carlton say at the reduction hearing that his sentence was in essence a discretionary sentence? At the very end, he did. Yes. And, and, and... Well, it was a response to the government's plea that he face this on discretionary. If that's the case, do we have jurisdiction? Yes, you do have jurisdiction because we're not challenging the district court's exercise of its discretion. We're saying that it didn't fully abide by 3582C's requirements, the procedural requirements. So it's very clear that this Court does have jurisdiction to consider that abuse of discretion. Do you want to save some time for rebuttal? Yes, thank you. Thank you for your argument. I appreciate it. I'm here for the United States case. Good morning, Your Honors. May it please the Court, Phil Ferrari for the United States. I want to start with the fact that the sentence that was given in this case, while it may have started from the guidelines, the sentence Ms. Cheney actually received was not based solely on her cooperation and the departure she got as a result of that cooperation. It was based upon that departure, which the government valued at approximately 28 percent, plus a break of just ignoring this four-level enhancement for leadership because the government made a mistake when it drafted the plea agreement. That plea agreement tried to encapsulate all of the applicable guideline variables, and it left leadership out. And despite the fact that the probation department looked at the facts and said, hey, that enhancement should apply, the government stood by its plea agreement, and they said, we'll give you the departure from an offense level effectively that does not include that role enhancement. And that's why below the government argued that, in truth, this really wasn't a sentence based on the guidelines to begin with. And throughout the transcripts, you can see Judge Carlton struggling with that over and over again. He says, this just does not seem to me to be a case where the sentence was based on the guidelines. At the end of the ---- Was this a discretionary decision on the part of the judge? It was, Your Honor. It was. And so the only way that the appellant can prevail today is to show that in some manner, Judge Carlton imposed or issued that decision in violation of the law. And he's arguing that Judge Carlton did that in two ways. First, he's saying that Judge Carlton did not follow the procedures of Section 3582. And what he's saying is that Judge Carlton failed to follow that procedure because he did not first determine the term of imprisonment that he would have imposed had the amendment been in place when sentence was imposed. And, in fact, Section 3582, there's nothing in the text of the statute that the Court requires the Court to do that. The policy statement, 1B1.10, does require that the Court determine the amended guideline range that would apply with the amendment in place. And there's no dispute that Judge Carlton did precisely that. If you look at the excerpts of record at page 75, the order Judge Carlton issued in this case on this motion, he identifies correctly the amended guideline range with the amendment in place. So the source of the requirement that a court take a first step and factor in the impact of the amended guideline is the policy statement. And Judge Carlton complied precisely with what is required by that policy statement. Now, the second mistake that appellant claims that Judge Carlton made was one of facts. He claims that Judge Carlton was incorrect when he states that the appellant didn't get an enhancement that she was entitled to. But what Judge Carlton meant when he said that was not that the role in the offense enhancement was not included in the offense level which he adopted. What he meant was that that role in the offense enhancement had no impact whatsoever on the sentence that Ms. Cheney actually received. And Judge Carlton was absolutely right about that. If you look at the transcript of the sentencing hearing in this case, Ms. Cheney's attorney at sentencing was very well aware of the fact that all parties involved were starting at an offense level and in a sentencing range, the bottom of which was 151 months. It did not include that role enhancement. And that they were arguing that what was at stake was whether there should be the government's recommended 28 percent departure from that level. Indeed, that was Ms. Cheney's counsel's entire argument at sentencing, that in fact her cooperation merited more than a 28 percent departure from that 151-month bottom of the line range. So when Judge Carlton says, look, she didn't get an enhancement that she was entitled to, he is absolutely right in terms of what actually happened in this case and at sentencing. Because he was absolutely right, he was perfectly within his discretion to go ahead and deny that reduction. He did it because of, as he says over and over again, the tremendous break that Ms. Cheney received, not just cooperation, not just a 28 percent departure, despite the letter that she wrote damaging her credibility, but in addition to that, all the parties involved simply ignoring that four-level departure or that four-level enhancement for role in the offense. Counsel, do you think we have jurisdiction? I think you have jurisdiction so long as you consider the appellant's claims that Judge Carlton didn't follow the applicable procedures or relied on a clearly erroneous state of facts. I don't think either occurred in this case, therefore. Do you think that he was ruling based on law rather than discretion? Oh, I think it's clear that his ultimate ruling was one issued in his discretion. In his discretion, looking at this case and the type of sentence that Ms. Cheney received, in his discretion, he declined to reduce it further. The provision in the plea agreement that would allow, arguably or not, the government to seek to prosecute the dismissed counts if she moved for a reduction in sentence, you're familiar with that? I am, Your Honor. Does that require the motion to be successful? I don't believe it does require the motion to be successful. But the mere filing would, arguably, permit the government to go forward on those dismissed counts. That is correct, Your Honor. However, as the government pointed out in its supplemental brief on the issue of the appellate waiver, the whole point of this plea agreement, and indeed it's one of the ways in which the government got in trouble in this case because we made that mistake by not accounting for the role in the offense enhancement, the whole point of this plea agreement was to ensure that a guideline sentence or something close to it was what was actually given. And that's why we didn't actually try to enforce the appellate waiver in this case, because we believed that, in fact, we weren't trying to exclude a 3582c2 motion where the guidelines were changed. Indeed, there's four defendants in this case. Two of the defendants got straight guideline sentences, and for both of those defendants, the government stipulated that they should get the benefit of the reduction in the amendment. The other two, the other remaining defendant, Mr. Robinson, was in sort of a similar position to Ms. Cheney. He did not get a career offender sentence, which he should have gotten, because his counsel had not actually counseled him to that, so the government said, well, we won't enforce it. And because he got that extra break, we said, well, he shouldn't get that, the benefit of the amendment. But for both of the defendants that got straight guideline sentences, the government agreed and went along with the reduction as a result of the amendment. Thank you, Your Honor. Thank you. Roboto. Judge Hawkins, the initial sentencing in this matter took place on May 2, 2006. That's a full year and a half before the guidelines were amended and several months more than when they were made retroactive. So there was absolutely no consideration of that in the plea agreement. That was not foreseen. Also, I'd like to point out about the two-step process that's required. The government says that that is not required and that the judge did absolutely what he had to do. In fact, there are two unpublished cases. Just four days ago, the Third Circuit in Spriggs adopted the two-step process that's required, and the Tenth Circuit, in another unpublished case on December 23, 2008, has also adopted the required two-step process. So this is not something that just flies by the night. There are four circuits now that are applying this. This is what the statute requires, not what the guidelines require. And Judge Carlton did not follow that. He said that he also said that there was no leadership enhancement. Well, if that's correct, then every piece of paper in this case is wrong, because that's what the probation officer recommended. That's what the court said when the court adopted the probation officer's recommendations. That's what the judgment commitment says. That's what the statement of reason says. She did get the four-level enhancement. He did not understand that. And that's why I urge the Court to remand this case so that Judge Carlton can review the case under the proper law with the proper findings of fact. Roberts. Okay. The case just argued to be submitted for decision. We alert counsel that, as Judge Fletcher indicated, we've got some concerns about jurisdiction in this case. It has nothing to do with you but a little bit of confusion, quite frankly, in circuit law. We may file some post-argument orders and ask for your input on that. So be alert to that. I'm aware of the panel that Judge Hawkins was on and that the mandate has been recalled in that case, and we would be glad to respond to the court's order. Thank you both. The case just argued, as I said, to be submitted for decision.
judges: Hug, Fletcher B. , Hawkins